UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES CURTIS KERN,

Plaintiff,

v.

DEPUTY HA, et al.,

Defendants.

No. 2:24-cv-0736 DJC CKD P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a California prisoner proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on claims arising under the First and Fourteenth Amendments against defendant and Sacramento County Jail Deputy Sheriff Ha [defendant]. Plaintiff alleges defendant used excessive force against plaintiff in violation of the Fourteenth Amendment and retaliated against plaintiff for protected conduct in violation of the First Amendment. Defendant Ha has filed a motion for summary judgment. For the reasons which follow, the motion for summary judgement should be granted and this case be closed.

I. Applicable Legal Standards

    A. Summary Judgement

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by

1

"citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely on the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must show that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

/////

2

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. That said, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### B. Fourteenth Amendment Excessive Force

To defeat defendant's motion for summary judgment with respect to plaintiff's Fourteenth Amendment excessive force claim there must be a genuine issue of material fact as to whether (1) defendant purposely and knowingly used force against plaintiff; and (2) that the force used was objectively unreasonable. See Kingsley v. Hendrickson, 576 U.S. 389, 396 (2015).

### C. Retaliation for Conduct Protected by the First Amendment

Jail officials generally cannot retaliate against inmates for exercising First Amendment rights such as petitioning the government for redress of grievances. Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). To survive defendant's motion for summary judgment, there must be a genuine issue of material fact indicating adverse action for exercise of protected conduct. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).

### D. Exhaustion of Available Administrative Remedies

Section 1997(e)(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." The exhaustion requirement demands "proper" exhaustion. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). To "properly exhaust"

3

administrative remedies, the prisoner must generally comply with department procedural rules, including deadlines, throughout the administrative process.  Jones v. Bock, 549 U.S. 199, 218 (2006); Woodford, 548 U.S. at 90-91.

E.  Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533 U.S. 194, 201 (2001).

II.  Plaintiff's Allegations

Plaintiff alleges as follows in the operative first amended complaint (ECF No. 16):

1.  On November 12, 2023, while plaintiff was sleeping, and during morning count, defendant walked between the bunk of plaintiff and another inmate.  While so doing, defendant saw plaintiff's left foot hanging from plaintiff's bunk.  After seeing this, defendant used his left thigh to make intentional, "violent" and "assault[ive]" contact with plaintiff's left foot.   The contact moved plaintiff's body six inches, jammed his left knee and left plaintiff in extreme pain.

2.  According to the inmate in the bunk next to him, defendant had an "aggressive" look on his face as he contacted plaintiff's left foot.

3.  At the time plaintiff's amended complaint was filed on September 16, 2024, plaintiff still suffered from a limp, extreme discomfort, and clicking in plaintiff's left knee.

4.  When plaintiff was "assaulted" plaintiff "yelled out so loud that everyone kept asking [him] what happened."

5.  This was done in retaliation for plaintiff's submission of numerous grievances as to medical care.

/////

4

6. Plaintiff seeks, among other things "three million, eight hundred thousand, and five hundred dollars in relief."

In his opposition to defendant's motion for summary judgement, plaintiff clarifies:

1. He is not sure defendant was looking where he was going when he made contact with plaintiff's foot.

2. After the contact, defendant was "right in [plaintiff's] face" and plaintiff was not sure if defendant was finished attacking plaintiff.

3. When defendant asked plaintiff if he was ok, plaintiff responded by shaking his head "no."

4. He limped for 7 months.

III.  Analysis

A.  Failure to Exhaust

Defendant points to evidence indicating the Sacramento County Jail has an inmate grievance process identified and explained in an inmate handbook each inmate receives upon booking.  ECF No. 35 at 15, 52-54.  While plaintiff did submit a grievance seeking medical treatment following his encounter with defendant (ECF No. 35 at 99), plaintiff did not submit a grievance asserting defendant intentionally caused him harm.  This being the case, plaintiff did not exhaust available administrative remedies with respect to the claims which remain in this action.

B.  Excessive Force

In his declaration (ECF No. 35 at 20), defendant describes the events of November 12, 2023 as follows:

> On November 12, 2023, I was working at the [Rio Cosumnes Correctional Center] as floor officer for the Kevin Blount Facility ("KBF"). My shift was 6:30 a.m. to 6:30 p.m.
>
> As part of my duties as floor deputy, I am responsible for conducting cell checks, counts, and face-to-locator card counts.  During face-to-locator card counts, deputies take a binder which has an index card for each inmate.  The index cards contain a photo of the inmate, their classification, and their housing assignments.

/////

5

The KBF facility is a barrack-style housing unit, with six separate pods. In each pod there are several rows of bunk beds on two separate floors.

As part of the face-to-locator card count, floor deputies are required to match the inmate depicted on the card to the proper bunk to ensure that the correct inmate is in the correct bunk. Face-to-locator card counts are performed twice per shift.

In order to properly ensure that the correct inmate is housed in the correct bunk, deputies are required to walk in between the bunks to get close enough to the inmates to determine the inmate's identity.

At approximately 6:46 a.m., I left the control area to perform a face-to-locator card count in the KBF unit. Consistent with the Sherrif's Office policy, I activated my departmental-issued body-worn camera (BWC).

During my face-to-locator card count on the lower tier of the 300 pod of KBF, I was trying to walk in between two rows of bunks. As I did so, I accidentally walked into [plaintiff's] feet which were hanging off the side of the bed. I immediately asked [plaintiff], "Are you good?" to determine if I had somehow injured him when I bumped his legs. He shook his head "yes." After I completed my count, I again asked [plaintiff] if he was OK and told him I did not mean to hit him. [Plaintiff] had no complaints at the time. I did not run into [plaintiff's] legs intentionally.

A true and correct copy of the footage from my BWC during my interaction with [plaintiff] is attached as Exhibit 2.

In addition to BWC, RCCC also has surveillance cameras in various locations in each pod. The surveillance footage does not have audio. I reviewed the surveillance camera footage from the 300 pod taken at approximately 6:50 a.m. This footage shows me conducting the face-to-locator card count I described previously. The video accurately depicts my interaction with [plaintiff] that morning. A true and correct copy of the surveillance footage from this interaction is attached as Exhibit 3.

At approximately 13:45 (1:45 p.m.) I was concluding a cell check in the 300 pod of KBF. My BWC was activated during this time. [Plaintiff] approached to talk to me. He handed me a grievance related to my accidental bump into his legs earlier in the day. He informed me he knew that it was an accident, but expressed frustration with the medical care provided afterward. He informed me that he did not believe it was on purpose. He asked me to write "medical" as the top of the grievance, which I did. He again informed me that his grievance was directed toward medical staff. A true and correct copy of my BWC from this interaction with [plaintiff] is attached as Exhibit 4.

/////

/////

6

The court has reviewed the surveillance and body camera video described by defendant and finds that defendant's description of what is depicted is accurate.  The court provides a few additional details clear from the video:

1.  When defendant arrived in the bunk area he announced that it was "count time" and that he needed to see the inmates' faces.  At that time, plaintiff was laying on his back with both feet dangling off the bed.  Plaintiff did not move in response to defendant's announcement and arrival.

2.  The distance between plaintiff and his neighbor's bunk was approximately 2 1/2 feet. Plaintiff's feet blocked somewhere between 1/3 and 1/2 of the distance between the bunks.

3.   Defendant walked between plaintiff and plaintiff's neighbor's bunk to identify an inmate in a bunk behind plaintiff; bunk 17.

4.  Shortly before defendant made contact with plaintiff, defendant was looking at the binder described by defendant in his declaration.

5.  When defendant made contact with plaintiff's left foot, he was looking toward bunk 17, a top bunk.

6.  After defendant made contact, he turned his left leg to the right trying to avoid further contact and immediately said "my bad, my bad."

7.  When contact was made, plaintiff made a mild groan and grimace but then indicated to defendant he was ok by nodding in the affirmative when defendant asked if he was all right. After contact, plaintiff raised his left leg to a bent position.  His body did not move in any other respect.  No other inmate yelled out in response to what happened.

8.  The contact appears incidental as opposed to forceful meaning defendant put no extra force into contact over what one would expect applied in incidental contact.  The contact was neither "violent" nor "assaultive."

9.  After defendant made contact, he was not "right in plaintiff's face."  When defendant asked if plaintiff was all right, his face was approximately 5 feet from plaintiff's.

10.  In the video showing plaintiff's delivery of his grievance to plaintiff, plaintiff is standing, has normal speech and has no outward signs of pain.

7

In light of all of the evidence before the court it is clear that the contact made by defendant with plaintiff's left foot cannot be reasonably characterized as anything but an accidental bump.  There is no evidence before the court that the contact was intentional or that defendant meant plaintiff any harm.  Plaintiff's attempts to characterize defendant's conduct as anything other than accidental and without malice are, especially after review of the video exhibits, not in good faith.

C.  Retaliation

As indicated above, there is nothing before the court which reasonably suggests defendant's contact with plaintiff was intentional.  Even if there was a genuine issue of material fact as to that issue, nothing before the court suggests that contact was made because of conduct by plaintiff protected under the First Amendment.  Nothing before the court shows defendant had any awareness of plaintiff's prior complaints about health care, or that defendant would have any animus toward plaintiff for making such complaints.

D.  Qualified Immunity

Because there is no genuine issue of material fact as to (1) whether defendant purposely and knowingly used force against plaintiff and (2) whether defendant took adverse action against plaintiff for exercise of conduct protected under the First Amendment, defendant is entitled to summary judgement based on qualified immunity.  There is no genuine issue of material fact as to whether defendant violated any right of plaintiff's which would have been known by any reasonable person.

IV.  Conclusion

For all of the foregoing reasons, the court will recommend that defendant's motion for summary judgment be granted, and this case be closed.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendant's motion for summary judgment (ECF No. 35) be granted; and

2.  This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 16, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
kern0736.msj(3)